281 P.2d 143

**ACE AUTO CO., Inc., a corporation, and James A. Terry, Defendants-Appellants,**

v.

**Buck RUSSELL, Plaintiff-Appellee.**

No. 5838.

Supreme Court of New Mexico.

March 7, 1955.

Donald Brown, Roswell, for appellants.

Carpenter, Eaton & Phelps, Roswell, for appellee.

SADLER, Justice.

The judgment from which this appeal is prosecuted was entered in a replevin action commenced by the plaintiff to recover possession of a certain 1953 Model Convertible Capri coupé automobile on which defendant Ace Auto Co., established a lien for $618.00, an amount which the plaintiff was given an election to accept as a lien on possession of the car awarded him, or in the alternative to accept judgment for value of the car less amount of the lien with possession of the car remaining in Ace Auto Co. free of the lien. The plaintiff having elected to accept latter alternative this appeal followed.

After trial before the court without a jury the trial judge filed his decision finding

the facts. They began with the recital that on August 13, 1953, the plaintiff for a good and valuable consideration by him paid was assigned and became the owner of the title to a certain automobile made the subject of the suit, to wit, a 1953 Model Lincoln Convertible Capri coupé automobile, red in color with a specified motor number, free and clear of any liens, mortgages or other encumbrances save as thereafter found.

The day following, on August 14, 1953, and in advance of the plaintiff filing his application for certificate of title, the defendant, Ace Auto Co., Inc., through its agents filed with the Bureau of Revenue, Motor Vehicle Department, Roswell, New Mexico, a lien in the amount of $618, the same appearing in the record as Defendants' Exhibit D–6. At the time of filing said lien the officers and agents of Ace Auto Co. knew or in the exercise of reasonable care and diligence should have known, that the title thereto had been transferred to the plaintiff.

It should be mentioned that one Kattie Myrle Russell, a daughter of the plaintiff, was made a third-party defendant to the action by the defendants, Ace Auto Co. and James A. Terry, appearing as third-party complainants in this behalf. This recitation is explanatory of the recital next to follow. The conditional sales contract bearing date June 10, 1953, executed in favor of James A. Terry as third-party plaintiff covering the automobile above described was procured and executed by and through fraud and collusion between the said James A. Terry and the said Kattie Myrle Russell. The said Terry was never the owner, possessor or grantor of said automobile and possessed no title thereto. The conditional sales contract was founded and based upon collusion by and between the parties just mentioned for the fraudulent purpose of defeating the title of the plaintiff in and to said automobile.

The defendants, Ace Auto Co. and James A. Terry, unlawfully and wrongfully took possession of said automobile on August 14, 1953, and have wrongfully detained and held possession of it from the plaintiff since the date named. The plaintiff made proper and timely demand upon the defendants and each of them for the return of the automobile but the defendants declined to comply with said demand. When they wrongfully possessed the car as hereinabove stated, it was of the reasonable value of $3,900.

On or about May 18, 1953, the third-party defendant, Kattie Myrle Russell, authorized extensive body work to be done on the automobile by reason whereof she became indebted in the sum of $618 to Ace Auto Company. She secured payment of said amount by a car repair plan lien appearing in the records as Defendants' Exhibit D–6.

At the time the plaintiff received an assignment and became the owner of said automobile, to wit, August 13, 1953, he paid to the third-party defendant, his daughter, no present consideration other than a credit on a pre-existing indebtedness owing by her to him, her father. It is the view of the court that the defendants should be required to return said automobile to the plaintiff, or in lieu of such return, to pay its reasonable value at the time of taking on August 14, 1953, namely, $3,900 less the sum due Ace Auto Co. in the amount of $618, at the election of the plaintiff.

Having made findings of fact as aforesaid, the court concluded that the plaintiff was the owner of the automobile in question but that defendant Ace Auto Co., Inc., held and should have established a valid and subsisting lien upon it as evidenced by car repair plan lien mentioned above. It was further concluded that as to the conditional sales contract of defendant James A. Terry, the same should be cancelled and held for naught and denied any validity whatever.

It was further concluded by the court that defendants wrongfully possessed the automobile on August 14, 1953, without permission or authority from the rightful owner and have continued said wrongful detention ever since. It was further concluded that the plaintiff should recover possession of the car, or in lieu thereof and at his election recover its value in the amount of $3,900

less the sum of $618 due Ace Auto Co., by reason of the aforementioned lien. The court ruled that the election, if any, should be made in writing and filed in the case within ten days.

The trial court's conclusions went on to say that if plaintiff should elect to recover possession of the car title thereto appearing in the name of Kattie Myrle Russell should be cancelled, rejected and held for naught and a new title issued in the name of the plaintiff, Buck Russell, should be issued free and clear of any and all liens except the one mentioned in favor of Ace Auto Co. in the sum of $618.

The further conclusion followed that the plaintiff was estopped by his own negligent conduct in dealing with his daughter, Kattie Myrle Russell, from denying validity of the lien of Ace Auto Co., Inc., in the amount of $618, the same having been taken in good faith and without collusion. The defendant, James A. Terry, was ordered to pay the costs of the action.

The foregoing paragraphs contain an almost verbatim recital of the trial court's findings. Constituting as they should a recital of ultimate facts, it is not until they are viewed against the background of evidence from which they were deduced that they take on life and meaning. Accordingly, we shall sketch as briefly as a fairly clear illumination of the facts found permits a portrayal of the evidentiary facts. It presents

a sad, indeed, pathetic picture but in no other way may we get a real understanding of the action of the trial court in the premises.

For some years prior to the trial out of which the judgment appealed from arose, the plaintiff had been conducting a plumbing and heating business in the city of Roswell, New Mexico. During the five years immediately preceding the trial his daughter, the third-party defendant herein, had been in charge of his local office attending to all the details incident to the conduct of such a business. As a part of such duties she paid the bills as presented from time to time. In order to facilitate this part of her duties the father, the plaintiff, adopted the practice of signing checks in blank, intending that they should be filled in as to amount and payee in each instance as required and mailed or delivered to the payee.

Toward the end of the five-year period of the daughter's employment, the father's business was discovered to be rapidly approaching bankruptcy. An audit was initiated and quickly developed the fact that over the five-year period of her employment, the daughter had carried on a series of embezzlements running into thousands of dollars, placing the father, the plaintiff, on the very verge of bankruptcy. The embezzlements had been made easy by the plaintiff's practice, mentioned above, of signing checks in blank which the daughter in many instances had not used as intended but on the contrary had filled in with the names of such payees as she chose and, receiving the cash thereon, had appropriated it to her own use.

Investigation disclosed that the daughter, who had entered into several unfortunate marriages, all of which had ended in divorce, had purchased her own home in Roswell in which she resided alone. She had also acquired several diamond rings and as well a diamond set wrist watch. Over the same period she had also purchased about four automobiles from Ace Auto Co., the last of which she bought in the spring of 1953, a Lincoln Convertible Capri automobile (1953 model), at a cost of more than $5,000. It was in this situation that the father, plaintiff herein, engaged the services of a finance company in Roswell to attempt, through a rehabilitation and refinancing of his business, to salvage something from the wreckage in which he suddenly found it.

One of the first steps taken by two representatives of the finance company mentioned was to talk to the daughter, in an effort to secure an appraisal of her assets and secure her consent to turn over to plaintiff such of them as gave promise of yielding funds in liquidation of the amounts wrongfully taken from him, as stated above. After talks with the daughter, the representatives of the finance company found her seemingly in a truly repentant attitude and willing, apparently, to do what she could to reimburse her father for the monies embezzled.

Among other items of property agreed to be transferred and delivered to the plaintiff was the aforesaid Lincoln automobile which the daughter on August 13, 1953, duly sold, assigned and transferred to her father by delivering to him on that date the certificate of title disclosing the car to be free and clear of any liens, mortgages or encumbrances, though a lien in favor of Ace Auto Company, one of the defendants, in the sum of $618, known as a car repair plan lien, was later recognized.

On the following day, to wit, August 14, 1953, and before plaintiff had filed his application for transfer of record of the certificate to him, Ace Auto Co., Inc., caused to be filed with Bureau of Revenue, Motor Vehicle Department, at Roswell, New Mexico, its lien in the amount of $618. At the same time, defendant, Terry, produced and filed the affidavit of lost certificate of title, for transfer to him, dated in June, 1953, and purporting to have been executed at that time, as security for a $1,500 cash loan supposedly then made by Terry to the third-party defendant, Kattie Russell.

The following day, to wit, August 15, 1953, the plaintiff, Buck Russell, filed with Roswell office of Bureau of Revenue, Motor Vehicle Department, the certificate of title, assigned on August 13, 1953, to him, showing no liens or encumbrances of any kind. At first, the Roswell office refused to file same, on account of the lien certificates filed by defendants the day before on the same car. Shortly thereafter, Tony Mignardot, a representative of the office, came to Roswell from the Santa Fe office of the Bureau of Revenue to straighten out the matter with the result that plaintiff's certificate of title was placed in a suspense file.

Thereafter, the plaintiff made demand upon defendants for delivery of the car to him. The demand was refused, the defendants jointly claiming right to possession under the two liens mentioned, viz., the $618 car repair plan lien of Ace Auto Company and the certificate of lien claimed by defendant, Terry, in account of the $1,500 loan and affidavit of lost certificate said to have been assigned him in connection therewith. It is to be remembered that the defendant, Terry, owned 90 per cent. of the stock of Ace Auto Co., Inc., and was its president.

The trial court placed no credence in the story of Kattie Myrle Russell and defendant, Terry, regarding the purported $1,500 loan. No record entries touching any such loan were ever placed in evidence. It was his testimony and hers that the loan was handled by delivery of $500 to her in cash on one day and a similar transfer to her of $1,000 in cash a few days later. No check evidenced the transfer. Asked why he did not at that time demand the certificate of title and record same defendant, Terry, replied that she asked him not to record anything since she intended to repay it in a short time. In addition, about the time of

this transaction, another party, a Mr. Weir, who was interested as a possible purchaser of the Lincoln happened to be in the home of Kattie Myrle Russell, third-party defendant, along with a Mr. Hanson and his wife, and heard Kattie complaining of the deal she was getting, adding, however, that she did not want to lose the automobile. When asked to state what was said, the following testimony was adduced, to wit:

"Q. What was said? A. Well, if I may be permitted, I was down there —this Mr. Hanson was working for me and I went down—

"The Court:—We just want to know what was said.

"A. (Continuing) The lady had been in some kind of hard luck and the conversation was about the deal she was getting and she was losing everything, and something came up about an automobile and that she wanted to save the automobile, that the other things she was not particular about. I was interested in the car at that time, and I think a Lincoln convertible or something, and I asked her what she owed on it, and then Nan Hanson said something and said 'Go ahead and tell Bill he is alright', and so being big hearted I was going to try to help her and I asked her and she never did tell me how much was owing on the car, but the thing she said was she had it fixed where she could save the car by a false or fake mortgage or something.

"Q. Did she say when she had done that? A. No, sir."

It should also be added that the check tendered by Kattie Russell to Ace Auto Company in payment for the Lincoln automobile was not her personal check but the business check of the Buck Russell Plumbing and Heating Company, as were all eight checks taken by defendants from her between the beginning of 1953 and the discovery of her embezzlements. It is also noticeable that the two defendants Ace Auto Co. and Terry acted together in all moves touching their claimed liens. They filed a joint answer, appeared by the same attorneys (H. B. Cartwright & Bro. v. United States Bank & Trust Co., 23 N.M. 82, 167 P. 436) and entered a joint claim to possession and right to possession of the car. In one allegation of their joint answer, they say:

"Defendants further allege that if the Plaintiff is the owner of said automobile, that such ownership is subject and inferior to *a* duly recorded *lien* in favor of the *Defendants* in the principal amount of $2,118.00, together with accrued interest thereon, which sum of money is presently due, owing and unpaid to the *Defendants*." (Emphasis ours.)

At the trial, however, they present not one but two separate liens, one claimed by Ace

Auto Co. for $618 and the other by Terry for $1,500.

It was on facts as recited and found that the trial court sustained the plaintiff's claim that the purported lien of defendant Terry for $1,500.00 was fraudulent, a result of collusion between defendant, Terry, and third-party defendant, Kattie Russell, and wholly lacking in bona fides, constituting no lien of any kind on the Lincoln car in question. This finding, of course, if sustained by the evidence, as we think it is, renders immaterial and unimportant one point argued at great length by the parties, namely, whether the plaintiff's acquisition of the car from his daughter, in satisfaction or partial satisfaction of an antecedent debt, the latter's defalcations, placed him in the position of a bona fide purchaser thereof without notice of defendant Terry's claim of lien. If, in fact, his claim of lien was collusive and fraudulent, as the trial court found and held, then he had no lien.

There appear in the evidence badges of fraud of sufficient weight and number to support a finding of fraud. Collusion between the defendants and the daughter, Kattie Russell, was alleged in the answer of plaintiff to third-party complaint of the defendants bringing her in as a party. The proof showed that defendants were cashing her checks for substantial sums, not only in payment for the Lincoln car, but for other purposes in no way connected with the plumbing business of the father. And in this day of multifarious business transactions conducted through banks by drafts on checking accounts, the mere passing of money in large amounts from hand to hand, rather than by check, is enough to arouse suspicion and suggest inquiry. Even though Terry gave his borrower no check to evidence the loan, unless it was his practice to carry large sums of money on his person of which there was no proof, a withdrawal on checks of sums in similar amounts, at or about the time of the loan, undoubtedly would have resulted in bank or check book entries. Proof of such entries would have tended to corroborate his testimony that such a transaction as that testified to actually took place. Yet no such proof was forthcoming.

Failure to tender for filing the claimed certificate of title said to have been passed or promised at the time and until alerted to the fact that the car was about to be taken from her to satisfy the father's claims lent no air of bona fides to the transaction claimed to have occurred by defendant, Terry, and the daughter of plaintiff. Indeed, the request and agreement to withhold the purported certificate from record cast a shadow over the transaction. We think the evidence sufficed to support the trial court's finding of fraud and collusion. This conclusion disposes of the appeal except a claim by defendants that the trial court improperly granted plaintiff the elec-

tion it did in the judgment rendered, a claim of error we shall next consider.

■ The defendants claim the trial court went outside its province in rendering the judgment it did, having due regard to the fact that the action was one in replevin in which the statute spells out the nature of the judgment to be rendered where a plaintiff prevails in the situation here shown. See 1953 Comp. § 22–17–7. The plaintiff having waived seizure, affidavit and bond, as he was privileged to do under the statute mentioned, the defendants claim the court was limited to entering the judgment prescribed by the last sentence of this section, reading:

"In such case, the verdict, if for the plaintiff, shall fix the value of the property, as well as the damages for detention; upon which verdict plaintiff shall have judgment for such damages, and either for the value of such property, as so fixed, or for the return thereof, at his election."

What the court actually did by its judgment was to uphold the lien of Ace Auto Co. to the car repair lien in sum of $618. It then called upon the plaintiff, who had prevailed against defendants on their claim to validity of the Terry lien of $1,500 on the Lincoln to make an election, which he did, whether to accept a return of the car subject to the lien, or take judgment for the value thereof, less the amount of the $618 lien held by Ace Auto Company. The value of the car having been found to be $3,900, judgment was awarded plaintiff against the two defendants, jointly and severally, in the sum of $3282.

The defendants do not question the right of plaintiff, as the prevailing party in the replevin action, nor could they do so successfully, to claim the election provided in the statute mentioned, having waived seizure affidavit and bond, following demand prior to suit. The only possible ground for complaint, then, must be the trial court's action in reducing the amount of the judgment by the $618 lien of Ace Auto Co. That redounded to their benefit rather than constituting a detriment. Both had joined in defending the right to possession of the car, resting such claim in part upon a $1,500 lien which the trial court found collusive and fraudulent. They thus were guilty of conversion.

■ Furthermore, defendants themselves had become third-party plaintiffs by bringing in Kattie Myrle Russell as a third-party defendant and asking that all claims of plaintiff, Buck Russell, in and to the Lincoln, be foreclosed as against the claims asserted by them. They, thus, are scarcely in a position to view the proceeding as one strictly in replevin and register complaint by reason of the slightest departure in relief awarded if it does not comply literally with a statutory judgment in replevin. Reed v. Sibley, 35 N.M. 307, 296 P. 572.

We fail to see prejudice to defendants in the respect complained of. Certainly, there is no error of which they can avail themselves. District Court Rule 54(c); Reed v. Sibley, supra; Garland v. Garland, 10 Cir., 165 F.2d 131.

A cross-appeal was prosecuted by the plaintiff but it is wholly without merit.

Finding no error the judgment reviewed will be affirmed.

It is so ordered.

COMPTON, C. J., and LUJAN, McGHEE and KIKER, JJ., concur.